JUDY CEBALLOS, Employee, Plaintiff,
INTREPID USA, Employer, CNA CLAIMS PLUS, Carrier, Defendants.
No. COA06-414
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Lyndon R. Helton, PLLC, by Lyndon R. Helton, for plaintiff-appellee.
McAngus, Goudelock & Courie, PLLC, by Trula R. Mitchell, for defendants-appellants.
JACKSON, Judge.
Intrepid USA ("defendant-employer") and its insurance carrier, CNA Claims Plus (collectively, "defendants"), appeal from an order of the Full Commission of the North Carolina Industrial Commission filed 28 October 2005 awarding workers' compensation benefits to Judy Ceballos ("plaintiff"). For the reasons stated below, we affirm. Plaintiff was born on 21 September 1952, and prior to working for defendant-employer, plaintiff had worked in a restaurant, as a nanny, and in manufacturing, specifically in knitting and inspecting cloth. Since 1992, plaintiff has worked in home health care as a certified nursing assistant. On 18 August 2001, defendant-employer  then called Health Mate  hired plaintiff as a certified nurses aid. As a certified nurses aid for defendant-employer, plaintiff's work duties included home nursing care.
Plaintiff testified that "[o]n May the 1st, 2002, I had just fed Mr. Roberts his breakfast, and I started to sit down in the dinette kitchen chair. And as I started to sit, the chair gave way  It came apart[]  and twisted real fast my foot, my knee, and my back, and I landed on my hip." Mr. Roberts was one of defendant-employer's clients, and defendants acknowledged that the fall occurred in the course and scope of plaintiff's employment. On the date of the injury, plaintiff notified defendant-employer of the injury, and that same day, Dr. John Piland ("Dr. Piland") at the Hart Industrial Clinic treated plaintiff, diagnosed her with a right hip contusion, and released her to work full duty. Plaintiff returned to work but continued to experience pain. On 3 May 2002, plaintiff returned to the Hart Industrial Clinic, and Dr. Robert W. Hart III ("Dr. Hart") diagnosed plaintiff with a back strain, prescribed Percocet for plaintiff's pain, and restricted her to limited bending and twisting and no lifting over twenty-five pounds. On 8 May 2002, plaintiff again sought treatment at the Hart Industrial Clinic, where a nurse practitioner diagnosed plaintiff with a lower back strain, continued the work restrictions set out by Dr. Hart, and recommended physical therapy.
On 21 May 2002, Dr. Hart released plaintiff to full duty work, and plaintiff returned to caring for Mr. Roberts. Plaintiff once again began experiencing pain, and on 29 May 2002, plaintiff was seen by Dr. Robert Kukla ("Dr. Kukla"), a board certified podiatrist. Dr. Kukla noted pain and swelling in plaintiff's foot, and based on a bone scan he performed on plaintiff's foot, Dr. Kukla diagnosed plaintiff with a stress fracture in her right foot. Dr. Kukla testified in his deposition that plaintiff's stress fracture most likely occurred as a result of her 1 May 2002 injury sustained at work. On 17 June 2002, Dr. Kukla placed plaintiff's right foot in a surgical shoe and prescribed minimal weight bearing. On 1 July 2002, Dr. Kukla placed plaintiff's right foot in an immobilizer cast boot, and on 16 August 2002, he placed plaintiff's foot in a plaster cast.
Plaintiff's last day of work was 1 July 2002,[1] and defendant-employer formally terminated plaintiff's employment on 19 August 2002 for reasons unrelated to her injury and corresponding workers' compensation claim.
On 17 September 2002, plaintiff presented to Dr. John dePerczel ("Dr. dePerczel"), an orthopedic specialist, complaining of right knee and back pain. Dr. dePerczel testified that plaintiff's fall on 1 May 2002 could have resulted in cartilage damage to the under surface of plaintiff's right kneecap and to the medial meniscus. Due to plaintiff's knee injury, Dr. dePerczel prescribed on 29 October 2002 a walker for plaintiff.
On 12 December 2002, plaintiff presented to Dr. Herbert J. Schulten ("Dr. Schulten"), an orthopedic specialist and partner of Dr. dePerczel. Dr. Schulten testified that plaintiff's fall may have caused a muscle strain in plaintiff's back and that as the strain improved, plaintiff's attention shifted toward her knee, which was mechanically deranged from torn cartilage. Dr. Schulten also explained that a knee derangement could cause additional stress to one's back.
On 16 January 2003, Dr. dePerczel performed arthroscopic surgery on plaintiff's right knee. Consequently, plaintiff was totally disabled until 16 July 2003, and on 30 July 2003, Dr. Kukla recommended that plaintiff limit her activities as much as possible to a sedentary position. On 13 October 2003, Dr. dePerczel performed back surgery on plaintiff after concluding that plaintiff's 1 May 2002 injury and the subsequent treatment for her knee problems aggravated plaintiff's underlying back condition.
In his 17 June 2005 "Patient Work Status Report," Dr. dePerczel stated that plaintiff had been unable to return to work since 17 September 2002. In a report dated 19 July 2005, Dr. dePerczel noted that plaintiff would be out of work indefinitely due to her injuries. On this same date, Dr. dePerczel prescribed Percocet, Darvocet, and Ambien to control plaintiff's pain and to help plaintiff sleep. Dr. dePerczel previously had prescribed Darvocet, Percocet, and Vicodin on a rotating basis for plaintiff.
Defendants denied that plaintiff's back injury and resulting surgery, right knee injury and resulting surgery, and right foot fracture were caused by plaintiff's fall while working for defendant-employer. Defendants, instead, contended that plaintiff only sustained a minor back strain and hip contusion as a result of the fall, and that those injuries were resolved within three weeks of the fall. Defendants thus argued that plaintiff was not entitled to workers' compensation for the time period following 21 May 2002.
On 22 August 2003, the dispute came before Deputy Commissioner Phillip A. Baddour III of the North Carolina Industrial Commission. By Opinion and Award entered 3 November 2004, Deputy Commissioner Baddour found in favor of plaintiff.
On 9 June 2005, the Full Commission ordered the matter reopened for the taking of further evidence for plaintiff to prove the extent of her disability after 1 April 2004. In her deposition on 2 August 2005, plaintiff testified that since the hearing before Deputy Commissioner Baddour, she had tried to find suitable replacement employment but had been unable to acquire employment within her physical limitations  specifically, no lifting, no bending, and limited walking. Plaintiff also testified that she had been taking medication for pain, depression, anxiety, and sleep difficulty. By Opinion and Award filed 28 October 2005, the Full Commission affirmed the Opinion and Award of Deputy Commissioner Baddour. The Full Commission determined that plaintiff's back, knee, and foot injuries arose out of and in the course of her employment with defendant-employer on 1 May 2002. The Full Commission further found that the combination of plaintiff's resulting pain, her physical limitations, and the effects of her medications have prevented plaintiff from obtaining and maintaining employment. The Full Commission thus concluded that plaintiff was entitled to temporary total disability compensation at the rate of $276.00 from 16 January 2003 through 16 July 2003 and from 13 October 2003 until further order of the Industrial Commission. On 28 November 2005, defendants filed timely notice of appeal.
On appeal, defendants contend that there was not competent evidence of record to support the Commission's findings (1) that plaintiff's right foot fracture, knee condition, and back condition were causally related to the 1 May 2002 injury by accident, and (2) that plaintiff was disabled after 21 May 2002. We disagree.
As a preliminary matter, we note that defendants' brief violates Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure. Pursuant to Rule 28(b)(6), "[i]mmediately following each question [presented] shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." N.C. R. App. P. 28(b)(6) (2006). In defendants' brief, each question presented is followed by a list of the portions of the order to which defendants assigned error. Defendants, however, failed to identify the assignments of error by their numbers and by the pages at which they appear in the record. "The North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.'"Viar v. N.C. Dep't of Transp., 359 N.C. 400, 401, 610 S.E.2d 360, 360 (per curiam) (quoting Steingress v. Steingress, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)), reh'g denied, 359 N.C. 643, 617 S.E.2d 662 (2005). Nevertheless, we conclude that defendants' rule violation is not so egregious as to warrant dismissal or sanctions.
When reviewing decisions of the North Carolina Industrial Commission, this Court is charged with determining whether there is competent evidence in the record to support the Commission's findings of fact and whether those findings, in turn, justify the Commission's conclusions of law. See Perkins v. U.S. Airways, ___ N.C. App. ___, ___, 628 S.E.2d 402, 406 (2006). Defendants have assigned error only to Findings of Fact numbered 22, 23, and 24, and accordingly, all other findings are deemed supported by competent evidence and are binding on appeal. See Beaver v. Crawford Paint Co., 240 N.C. 328, 330, 82 S.E.2d 113, 114 (1954); see also Seay v. Wal-Mart Stores, Inc., ___ N.C. App. ___, ___, 637 S.E.2d 299, 301 (2006) (citations omitted).
It is well-established that
[e]xpert testimony that a work-related injury 'could' or 'might' have caused further injury is insufficient to prove causation when other evidence shows the testimony to be 'a guess or mere speculation.' However, when expert testimony establishes that a work-relatedinjury 'likely' caused further injury, competent evidence exists to support a finding of causation.
Cannon v. Goodyear Tire & Rubber Co., 171 N.C. App. 254, 264, 614 S.E.2d 440, 446.47 (citations omitted), disc. rev. denied, 360 N.C. 61, 621 S.E.2d 177 (2005).
In the case sub judice, expert testimony tended to show that plaintiff's 1 May 2002 injury likely caused her subsequent foot, knee, and back injuries, and as such, competent evidence supports the Industrial Commission's findings and conclusions. In his deposition, Dr. Kukla concluded that plaintiff's fall of 1 May 2002 "most likely" caused the stress fracture to plaintiff's right foot.
DR. KUKLA: Are you saying is it more likely than not that this caused the injury . . . ?
PLAINTIFF'S COUNSEL: I'm saying do you feel comfortable in your opinion as to a reasonable degree of medical certainty, trained in your profession and knowing what you know as a doctor.
DR. KUKLA: Right. I would say most likely it did come from the injury.

(Emphasis added). Dr. Kukla further explained that because of the unusual location of plaintiff's stress fracture, the fall plaintiff sustained "more than likely" caused the fracture.
With respect to plaintiff's knee condition, Dr. Schulten was asked during his deposition: "Assuming she [plaintiff] had no other trauma, what would be the most likely source for the knee pain and the resulting surgery?" Dr. Schulten responded that the "most likely" source of the pain and resulting surgery to plaintiff's knee was "[t]he injury as described," i.e., plaintiff's fall when the chair broke.
Finally, Dr. dePerczel opined that although plaintiff probably had a preexisting back condition, specifically "degenerative disease facet arthritis," "[t]he conditions that caused her problems after the injury, almost for certainty, aggravated her underlying back condition." (Emphasis added). Dr. dePerczel clarified that by "conditions," he meant "the cast and the walker and the funny walk . . . [a]nd the injury."
Dr. David N. Dupuy ("Dr. Dupuy"), who performed a medical review of the records of Dr. DePerzcel, Dr. Schulten, and Dr. Hart, testified to the contrary. Dr. Dupuy stated, "With a reasonable degree of medical certainty I feel I can be certain that the fall in the chair when she landed on her hip did not cause the stress fracture." Dr. Dupuy further opined that the back injury and resulting surgery were not "directly related to the injury that she [plaintiff] had on 5-1-02." Dr. Dupuy also expressed doubt that plaintiff's knee injury was caused by the fall in the chair, stating, "I don't see any association of a knee injury with the initial presentation." Similarly, Dr. Hart also expressed doubt about the purported causal connection between plaintiff's fall and her back, knee, and foot injuries. For example, with respect to plaintiff's stress fracture, Dr. Hart stated, "I've never seen a stress fracture following an injury like falling from a chair, and I've seen a lot of stress fractures if that helps you." Nevertheless, despite the testimony of Dr. Hart and Dr. Dupuy, competent evidence of record  specifically, the testimony of Dr. Kukla, Dr. Schulten, and Dr. dePerczel  exists to support plaintiff's contentions, and it is not the task or the province of this Court to re-weigh the evidence presented before the Industrial Commission. See Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (noting that "on appeal, this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" (quoting Anderson v. Lincoln Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965))), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999). Accordingly, as there was competent evidence in the record to support the Commission's findings of fact and those findings, in turn, justify the Commission's conclusions of law, defendants' assignment of error is overruled.
In their second argument, defendants contend that the Industrial Commission erred in finding that plaintiff was disabled after 21 May 2002  when Dr. Hart released plaintiff to full work duty  as a result of the 1 May 2002 injury plaintiff sustained while working for defendant-employer.
As our Supreme Court has explained, "'[d]isability,' within the North Carolina Workers' Compensation Act, 'means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.'" Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (quoting N.C. Gen. Stat. § 97-2(9)). The burden of proving a disability as well as the extent of the disability lies with the employee seeking compensation under the Act. See id. (citing Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986)). In order for a plaintiff to establish a claim for disability, whether temporary or permanent, under the Act,
the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). This Court has explained that
[t]he employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Prod. Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). Defendants contend that plaintiff did not present sufficient evidence to satisfy her burden, while plaintiff contends there was sufficient evidence to satisfy either the second or third prongs of the Russell analysis.
Pursuant to the second prong in the Russell analysis, plaintiff would have satisfied her burden of proving disability if she produced evidence that she is capable of some work, but, after a reasonable effort, has been unsuccessful in obtaining employment. See id. Plaintiff testified that from the date her employment with defendant-employer was terminated to the date of the hearing before Deputy Commissioner Baddour, she sought alternate employment but had been unsuccessful.
. . . I went to K-Marts and put in an application, and I  and I informed them that I was under doctor's care. And they told me as long as I was under doctor's care, they would not  they would not hire me. I also went to Cox Manufacturing, but because I have no abilities there, they wouldn't hire me. I mean, they wouldn't even let me put in an application. And I've been looking in the Hickory Daily Record, but because of my education and there's no sitting, I have no clerical duties  I've been looking, but there's nothing out there for me.
Defendants did not object to this testimony. Plaintiff reaffirmed this testimony in her deposition on 2 August 2005, during which plaintiff explained, "I have job searched at different companies, convenience stores, and put in ads, and I've also run ads in IWANNA paper." Pursuant to an order from Commissioner Pamela T. Young, plaintiff kept a record of her job search activity, with nine entries from 18 June 2005 to 30 June 2005. Plaintiff testified that since 30 June 2005, "I have been physically inable [sic] to get out and search for work. . . . I'm just homebound." Consequently, plaintiff's job search has been limited to placing newspaper advertisements for a sitter-companion job, offering company to someone elderly or who is infirm. As plaintiff explained, a sitter-companion was a job for "someone to go in and be a friend, someone to travel, mainly assist just _ someone to be there with them to where they won't be alone." Plaintiff received one response to an advertisement, but "the lady . . . wanted somebody to lift  in other words, bathe her mother, which was 84, and have  be able to walk and do house cleaning, cooking. I told her I needed something more companion job because I wasn't able to ambulate."
Plaintiff's testimony served as the basis for the Full Commission's Finding of Fact number 20:
In her deposition testimony on August 2, 2005, plaintiff testified that since the hearing before the deputy commissioner, she has tried to find work within her physical limitations of no lifting, bending and limited walking, but was without success. She testified that she is basically immobile and is taking medication for pain, depression, anxiety, and to help her sleep.
Defendants did not assign error to this finding, nor did they assign error to Finding of Fact number 21, in which the Commission found that Dr. dePerczel opined that plaintiff "was not capable of performing a full-time job due to her physical limitations and the narcotics she is taking on a chronic basis." As such, these findings are binding on appeal.See Thompson v. Fed. Express Ground, ___ N.C. App. ___, ___, 623 S.E.2d 811, 814 (2006). In turn, the evidence presented, as well as the Findings of Fact to which defendants did not assign error, fully support the Commission's Finding of Fact number 24:
Based upon the greater weight of the competent evidence of record, the Full Commission finds that the combination of plaintiff's pain, physical work limitations and the effects of her medications due to her injuries by accident to her back, right knee and right foot have prevented plaintiff from obtaining and maintaining employment.
Although defendants appear to argue that plaintiff did not produce sufficient evidence, as explained supra, it is not for this Court to weigh or re-weigh the evidence. We therefore hold that plaintiff satisfied her burden under the second prong of the Russell analysis of producing evidence that she is capable of some work, but, after a reasonable effort, has been unsuccessful in obtaining employment. As we have found that plaintiff satisfied her burden of proving her disability under the second prong of the Russell analysis, we need not reach the issue of whether plaintiff also satisfied her burden under the third prong. Accordingly, defendants' assignment of error is overruled.
Affirmed.
Judges GEER and LEVINSON concur.
Report per Rule 30(e).
NOTES
[1] At the hearing before Deputy Commissioner Phillip A. Baddour III on 22 August 2003, plaintiff waived her claim to temporary total disability benefits prior to 1 July 2002.