* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-trial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The Phoenix Insurance Company was the carrier on the risk for Defendant-Employer on the date of the alleged injury and until July 30, 2000.
3. The alleged date of injury and/or occupational disease is July 1, 2000.
4. An employer/employee relationship existed between Plaintiff and Defendant-Employer at all relevant times.
5. The Form 22 Wage Chart in connection with this case yields an average weekly wage of $355.47, and a compensation rate of $236.98.
6. Pursuant to a previous Opinion and Award dated August 27, 2004, Plaintiff's claim was deemed compensable, and Plaintiff was paid temporary total disability benefits from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001.
7. The parties stipulated to a Pre-trial Agreement and Employment Security Commission records. Additionally, the Full Commission Opinion and Award dated August 27, *Page 3 
2004, and the record upon which that Opinion and Award was based, are incorporated by reference into this record.
8. Following oral arguments before the Full Commission on June 14, 2007, the parties amended Stipulation Number Two (2). Defendants now stipulate without objection from Plaintiff that after July 30, 2000, The Phoenix Insurance Company became the carrier for Defendant-Employer again on April 12, 2002, and remained the carrier through the last day Plaintiff worked for Defendant-Employer.
 * * * * * * * * * * * ISSUES
1. Defendants' issues are:
 a. Whether Plaintiff is or has been disabled since July 24, 2003, as a result of her compensable occupational disease or injury by accident, where she returned to work with no medical restrictions, and where she left work due to an economic layoff?
 b. If so, whether Defendants are entitled to a credit for unemployment benefits paid to Plaintiff, pursuant to N.C. Gen. Stat. § 97-42.1
(2007)?
 c. Whether Plaintiff retains any permanent and/or partial disability as a result of such injury or disease?
2. Plaintiff's issues are:
 a. Whether Plaintiff is currently disabled as a result of her compensable occupational disease or injury by accident?
 b. If so, whether Plaintiff is permanently and totally disabled as a result of such injury or disease? *Page 4 
Based upon all of the competent evidence of record, the Full Commission makes the following:
 * * * * * * * * * * * FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Deluca on September 28, 2005, Plaintiff was 56 years old, having a date of birth of February 20, 1949. She has a ninth (9th) grade education. She worked for Defendant-Employer from 1986 to October 2003. Prior to working for Defendant-Employer, Plaintiff worked for Burlington House Furniture from the 1970's until 1986.
2. Plaintiff's job at Lexington Furniture was as a filler/glaze wiper in the Finishing Room. In that position, Plaintiff frequently used her hands with force, and engaged in various repetitive motions with her hands.
3. Pursuant to an Opinion and Award of the Full Commission issued on August 27, 2004, the Full Commission determined that Plaintiff contracted the occupational diseases of recurrent bilateral carpal tunnel syndrome and also rotator cuff/supraspinatus tendonosis of her right shoulder due to causes and conditions characteristic of and peculiar to her employment with Defendant-Employer, and that these were not ordinary diseases of life to which the general public not so employed is equally exposed.
4. Pursuant to the same Opinion and Award, the Full Commission found that Plaintiff suffered a specific traumatic incident to her neck that materially aggravated her preexisting degenerative disc disease and cervical spondylosis on or about May 1, 2000.
5. Plaintiff was out of work due to her compensable claims from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001. *Page 5 
6. Also, pursuant to the previous Opinion and Award, Plaintiff received temporary total disability benefits from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001.
7. Dr. Ranjan Roy released Plaintiff to return to work on November 5, 2001 with the restrictions of no lifting more than 20 pounds, and of limiting the elevation of her arm above shoulder level for a period of three (3) months. Defendant-Employer made work within those restrictions available to Plaintiff. During those three (3) months of light duty, Plaintiff worked in the office bagging screws. This job was a regular job offered to other employees and was available at multiple plants.
8. Dr. Roy assigned no work restrictions after February 2002.
9. By March 2002, Plaintiff returned to work in her regular job as a filler/glaze wiper in the drawer line at Plant 12 with no restrictions. The position to which Plaintiff returned to work in March 2002 was a regular job that was advertised to the general public, with no accommodations being made for Plaintiff.
10. The regular duties of the job of filler/glaze wiper did not require Plaintiff to lift greater than 20 pounds or to elevate her arm above shoulder level.
11. Plaintiff remained in essentially the same job position of filler/glaze wiper for more than 18 months until her permanent lay-off in October 2003. Defendant-Employer transferred Plaintiff from Plant 12 to Plant five (5) in the spring of 2003, and as a result, Plaintiff moved from the drawer line to the table line. However, Plaintiff's job at Plant five (5) had the same physical requirements, and did not involve either lifting over 20 pounds or elevation of the arms above shoulder level. *Page 6 
12. The Full Commission finds that Plaintiff had no permanent work restrictions after March 2002. During 2002, neither Dr. Robert Wilson nor Dr. Stephen Furr, Plaintiff's treating physicians at that time, wrote Plaintiff out of work, nor did either of them place Plaintiff on any work restrictions. Plaintiff did, however, return to Dr. Furr in June 2002 complaining of right arm and shoulder pain, as well as pain in her neck. An electromyogram (EMG) showed findings consistent with carpal tunnel syndrome and spinal nerve problems at the C5 level.
13. Upon referral of Dr. Furr, Plaintiff saw Dr. Wilson on August 2, 2002. He was unable to determine the origin of Plaintiff's complaints, but did give her an injection. Plaintiff returned to Dr. Furr thereafter, and he provided treatment until September 2002. Thereafter, Dr. Furr did not see her again until October 6, 2004. On February 9, 2004, Dr. J. Simmons Riggan saw Plaintiff, and was of the impression that she had probable recurrent bilateral carpal tunnel syndrome.
14. Plaintiff satisfactorily performed her job as a filler/glaze wiper from the time her treating physicians released her to unrestricted duty in March 2002 to the time Defendant-Employer laid her off.
15. The Full Commission finds Plaintiff's testimony that she was unable to work as fast as her co-workers and unable to complete her job in the "normal" fashion not credible and contrary to other credible and competent evidence of record. Moreover, Dr. Furr testified that if Plaintiff was working slower and at less than the normal job requirements, it would be less likely that her job was an aggravating or contributing factor to her condition.
16. Plaintiff admits that Defendant-Employer laid her off for economic reasons, rather than due to medical restrictions, and that she would have continued to work if Defendant-Employer had not laid her off. *Page 7 
17. On October 15, 2003, Defendant-Employer permanently laid off Plaintiff, along with numerous other co-workers, due to economic conditions. This layoff was the result of a significant decline in Defendant-Employer's business. At the time Defendant-Employer laid off Plaintiff, she was not under any medical restrictions.
18. After certifying that she was able to work, Plaintiff collected unemployment benefits in the amount of $226.00 per week from October 18, 2003 through March 27, 2004.
19. In April 2004, Plaintiff again certified that she was able to work, and collected unemployment benefits of $123.00 per week from April 25, 2004 through November 28, 2004. Plaintiff received the maximum amount of unemployment benefits to which she is entitled.
20. In addition to unemployment benefits, Plaintiff had the opportunity to obtain her general equivalency diploma (GED) free of charge. Plaintiff acknowledged that she was aware of this opportunity, but chose not to take advantage of it. Plaintiff testified that although she believed she could not work, she looked for work as a requirement to continue receiving unemployment compensation.
21. Dr. Stephen Furr signed a Form 28U on February 4, 2004 certifying Plaintiff could no longer work. However, based on the greater weight of the evidence, including the testimony of Dr. Furr, the Full Commission finds that Dr. Furr's signing of the Form 28U on February 4, 2004, after not treating Plaintiff since September 2002, and without examining Plaintiff, is not competent evidence of Plaintiff's ability to work or any disability. Dr. Furr admitted that he must have completed the Form 28U because Plaintiff asked him to, that he did so with "Mrs. Carter's blessing," and that he had no knowledge of her physical condition at the time he signed the Form 28U. Also, at the time Dr. Furr signed the Form 28U, Plaintiff was certifying to the Employment Security Commission that she was able to work. The Full *Page 8 
Commission further finds that Plaintiff did not complete the "Employee" section of the Form 28U where the employee explains the reasons claimed for no longer being able to work.
22. Had Plaintiff wanted to continue working, Dr. Furr testified that he would have supported that decision instead of completing the Form 28U. He never ordered nor obtained a Functional Capacity Evaluation (FCE) on Plaintiff, and he never stated that Plaintiff could not do any work.
23. After September 30, 2002, Plaintiff did not seek actual treatment from Dr. Furr until October 6, 2004, more than seven (7) months after he certified she was unable to work on the Form 28U. At that time, Plaintiff had complaints of bilateral hand pain and numbness. Plaintiff told Dr. Furr that Defendant-Employer laid her off in 2003, and that she had not worked since. Dr. Furr diagnosed Plaintiff with cervical arthritis with a possibility of upper extremity radiculopathy and possible exacerbation of carpal tunnel syndrome. Dr. Furr recommended that Plaintiff undergo a computed tomography (CT) myelogram to evaluate the neck for nerve impingement, and that Plaintiff undergo bilateral upper extremity E.M.G.'s to evaluate nerve damage. It appears from the record that the CT myelogram was not done until November 7, 2005. Dr. Furr testified that the findings indicated that there was nothing currently pressing on Plaintiff's nerves to give her symptoms into her hands. The EMG. did indicate that she had symptoms consistent with carpal tunnel syndrome. Dr. Furr was of the opinion that Plaintiff's job duties were repetitive enough to contribute to the development of carpal tunnel syndrome, and that continuing these job duties (including the wiping) would exacerbate her symptoms.
24. Plaintiff saw Dr. Furr again on December 7, 2005. At that time, Plaintiff had "multiple complaints," and Dr. Furr confirmed the diagnosis of bilateral carpal tunnel syndrome and referred Plaintiff to a hand specialist. Again, Dr. Furr did not find Plaintiff unable to work, *Page 9 
nor did he assign her any work restrictions. Dr. Furr never rendered an opinion, nor is he of the opinion, that Plaintiff is completely unable to work.
25. With respect to whether Plaintiff's symptoms in 2004 and 2005 after she stopped working after her lay-off are related to her work for Defendant-Employer, Dr. Furr was of the opinion that if Plaintiff was doing repetitive work up to October 2003 and stopped, hopefully the symptoms would have improved, but he testified that he cannot prove or disprove that her symptoms would have waned enough for her to be back at baseline. He opined that in February 2004, the symptoms were more likely related, but in 2005, when Plaintiff saw him, the symptoms were less likely to be related.
26. Based in part upon the fact that Plaintiff had not worked in two (2) years by the time Dr. Furr gave his deposition testimony, he opined that, more likely than not, her symptoms in 2005 were unrelated to her work, and she was simply at or close to her pre-injury "baseline."
27. On June 8, 2006, Dr. Jeffrey Baker, a specialist in upper extremity and spinal surgery, examined Plaintiff. Dr. Baker testified that Plaintiff had symptoms of carpal tunnel syndrome, as well as pronator syndrome, which is the entrapment of the median nerve at the elbow. He testified that persons who do repetitive lifting or repetitive flexion and extension of the forearm often develop pronator syndrome, which is caused by the motion of turning the forearm from palm up to palm down, utilizing the pronator muscle, and that people who do this specific activity throughout the day develop pronator syndrome.
28. The Full Commission gives great weight to the testimony of Dr. Baker. However, the evidence of record is insufficient to support a finding that Plaintiff performed the motions associated with pronator syndrome throughout the day in her employment with Defendant-Employer. *Page 10 
29. Dr. Baker further testified that carpal tunnel syndrome and pronator syndrome are not related, because they involve entirely different areas of entrapment. Pronator syndrome is distinct and unrelated to Plaintiff's cervical problems or carpal tunnel syndrome. Dr. Baker was unable to render an opinion on when Plaintiff developed pronator syndrome.
30. Plaintiff's claim for compensation due to pronator syndrome is a new claim and Plaintiff has the burden of proving compensability. The Full Commission finds that Plaintiff has failed to prove that she contracted pronator syndrome due to causes and conditions related to her work, or that her work duties placed her at an increased risk over the general public not so employed of contracting this condition. The Full Commission further finds that there is insufficient evidence in the record to establish that Plaintiff's pronator syndrome is a result of her prior compensable injury or disease.
31. Dr. Baker further testified that Plaintiff has degenerative changes in the cervical spine, based upon his review of magnetic resonance imaging (MRI). Dr. Baker did not give an opinion on whether the degenerative changes were the result of Plaintiff's prior spinal surgery. The Full Commission finds that there is insufficient evidence of record to establish that such degenerative changes were the result of Plaintiff's prior cervical spine surgery.
32. Dr. Baker had no knowledge of Plaintiff's specific job duties for Defendant-Employer, and rendered no opinion on whether Plaintiff was able to work, or in what capacity.
33. Based on the greater weight of the evidence Plaintiff has failed to prove any work-related disability after March 2002.
34. The original Opinion and Award filed on August 27, 2004 found compensable Plaintiff's occupational disease of bilateral carpal tunnel syndrome, rotator cuff/supraspinatus tendinosis of the right shoulder, and aggravation of pre-existing degenerative disc disease and *Page 11 
cervical spondylosis. The Opinion and Award reserved for subsequent determination Plaintiff's permanent partial disability, if any, from these conditions, and this claim is, therefore, still open.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In 2000, Plaintiff sustained both a compensable specific traumatic incident and a compensable occupational disease of bilateral carpal tunnel syndrome. N.C. Gen. Stat. §§ 97-2(6); 97-53(13) (2007).
2. Plaintiff presented insufficient evidence to establish that she is incapable of earning the wages she was receiving prior to her compensable injuries, as she returned to work with no medical restrictions in March 2002 and continued to work without restrictions through October 15, 2003, when Defendant-Employer laid her off, along with numerous other co-workers, due to economic reasons. Plaintiff's failure to earn wages with Defendant-Employer after October 15, 2003 is not due to disability, but is the result of her lay-off from her employment due to a reduction in work force resulting from a decrease in Defendant-Employer's business. N.C. Gen. Stat. § 97-2(9) (2007).Segovia v. J. L. Powell Co., 167 N.C. App. 354, 608 S.E.2d 557 (2004).
3. Plaintiff's claim for compensation due to pronator syndrome involves a new claim, and the burden of proof is on Plaintiff to establish compensability. Plaintiff failed to meet that burden. Plaintiff did not prove that she contracted an occupational disease of pronator syndrome due to causes and conditions related to her work, or that her work duties placed her at an increased risk over the general public not so employed of contracting this condition. N.C. Gen. Stat. § 97-53(13) (2007). Rutledge v. Tultex Corp./King's Yarn, 308 N.C. 85,
 *Page 12 301 S.E.2d 359 (1983). Also, Plaintiff failed to establish that any symptoms and physical findings that she may have developed on or after June 24, 2003 which may be related to pronator syndrome are causally related to, or a direct and natural consequence of, her prior compensable injury or disease. Cannon v. Goodyear Tire Rubber Co., 171 N.C. App. 254,614 S.E.2d 440 (2005); Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485 (1983), disc. review denied, 310 N.C. 309, 312 S.E.2d 652
(1984).
4. Plaintiff failed to establish, by the greater weight of the evidence, that as a result of her compensable injury and occupational disease, she continues to be disabled from working in any employment since March 2002. Plaintiff returned to work with no work restrictions in March 2002, and satisfactorily completed her job until the time Defendant-Employer laid her off in October 2003. The medical evidence establishes that Plaintiff was capable of working after her lay-off and that her need for some medical treatment for symptoms related to her compensable conditions did not prevent her from working. N.C. Gen. Stat. § 97-29 (2007). Russell v. Lowes Prod. Distributing, 108 N.C. App. 762,425 S.E.2d 454 (1993).
5. Plaintiff failed to establish, by the greater weight of the evidence, that she is permanently and totally disabled. N.C. Gen. Stat. § 97-29 (2007).
6. Plaintiff failed to meet her burden of proving that she retains any permanent or partial disability as a result of her compensable injury and disease claims, which were left open in the prior Opinion and Award. N.C. Gen. Stat. §§ 97-31, 97-30 (2007).
7. Evidence that Plaintiff returned to work without restrictions is not sufficient to rebut the "Parsons Presumption." Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). In Parsons, the North Carolina Court of Appeals held that where a claimant previously proves the condition of a particular body part is causally related to a compensable accident, a *Page 13 
presumption arises that any future medical condition affecting that body part is causally related to the original compensable claim, and is, therefore, also compensable. Id., 126 N.C. App. 540, 542 485 S.E.2d 867,869. In this case, although Plaintiff is able to work without restrictions, the medical evidence indicates that she continues to suffer from symptoms related to carpal tunnel syndrome, as well as neck pain. Thus, Defendants are obligated to pay for any medical treatment reasonably necessary to effect a cure, give relief, or lessen Plaintiff's disability from these compensable conditions. N.C. Gen. Stat. §§ 97-25, 97-25.1 (2007).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for additional indemnity compensation benefits for bilateral carpal tunnel syndrome, as well as her shoulder and neck conditions covered under the August 27, 2004 Opinion and Award, is hereby DENIED. Plaintiff's claim for continuing medical treatment for these conditions is GRANTED.
2. Plaintiff's claim for compensation for pronator syndrome as an occupational disease is DENIED.
3. Defendants' stipulations concerning coverage are hereby admitted into evidence and added to the end of the Transcript Exhibit pages.
4. Defendants shall pay the costs.
This the ___ day of May 2008. *Page 14 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE SELLERS COMMISSIONER
 *Page 1