THOMAS NEIL CANNON, EMPLOYEE, PLAINTIFF-APPELLEE v. GOODYEAR TIRE & RUBBER COMPANY, EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS-APPELLANTS

No. COA04-168

(Filed 5 July 2005)

**1. Appeal and Error— motion to dismiss—timeliness of proposed record on appeal**

Although plaintiff employee contends that defendants' appeal in a workers' compensation case should be dismissed on the ground that defendants did not timely file the proposed record on appeal, the Court of Appeals denied the motion to dismiss on 23 June 2004.

**2. Workers' Compensation— work-related injury—specific traumatic incident**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff employee sustained a work-related injury by specific traumatic incident while lifting a drum hoist, because: (1) plaintiff testified in detail at the hearing about the 6 April 2001 incident; and (2) plaintiff's supervisor and the infirmary nurse confirmed plaintiff's testimony at the hearing.

CANNON v. GOODYEAR TIRE & RUBBER CO.

[171 N.C. App. 254 (2005)]

**3. Workers' Compensation— automobile accident aggravated and/or exacerbated work-related injury—failure to show independent intervening cause**

The Industrial Commission did not err in a workers' compensation case by its finding of fact and conclusion of law that plaintiff's 18 April 2001 automobile accident aggravated and/or exacerbated his 6 April 2001 work-related injury, because: (1) regardless of whether plaintiff was en route to receive treatment for his work-related injury, the automobile accident was not an independent intervening cause since it did not result from plaintiff's own intentional conduct; and (2) competent evidence in the record supported the conclusion of law that the automobile accident aggravated plaintiff's work-related injury including the testimony of plaintiff's chiropractor.

**4. Workers' Compensation— expert testimony—guess or mere speculation**

The Industrial Commission erred in a workers' compensation case by its finding of fact and conclusion of law that plaintiff's preexisting spinal kyphotic deformity was materially aggravated or exacerbated by the 6 April 2001 work-related injury and the case is remanded for new findings of fact and conclusions of law in accordance with the correct legal standard, because: (1) expert testimony that a work-related injury could or might have caused further injury is insufficient to prove causation when other evidence shows the testimony to be a guess or mere speculation, whereas expert testimony that establishes a work-related injury likely caused further injury provides competent evidence to support a finding of causation; (2) the expert testimony in this case does not rise above a guess or mere speculation when the expert testified that the work-related injury could have been an exacerbating or aggravating factor, but he further testified that he was uncertain that this was the case; and (3) the expert testified that he was unsure as to whether any single event caused the onset of plaintiff's symptoms at all and further testified that plaintiff's 6 April 2001 work-related injury could have nothing to do with the kyphotic deformity.

**5. Workers' Compensation— amount of compensation— aggravation and/or exacerbation caused by automobile accident**

A workers' compensation case is remanded for a determination as to the proper amount of compensation to which plaintiff

is entitled for his 6 April 2001 work-related injury and its aggravation and/or exacerbation caused by an 18 April 2001 automobile accident.

**6. Appeal and Error— preservation of issues—failure to argue**

The assignments of error that were not addressed in defendants' brief are abandoned pursuant to N.C. R. App. P. 28(b)(6).

Appeal by defendants from opinion and award entered 24 October 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 January 2005.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Nicole Dolph Viele, for defendants-appellants.*

McGEE, Judge.

Thomas Neil Cannon (plaintiff) began working for defendant Goodyear Tire and Rubber Company (Goodyear) in 1976. Plaintiff was employed as a tire builder throughout his employment at Goodyear. Plaintiff went to Doctors' Urgent Care on 22 March 2001 seeking treatment for blurred vision and "tingling" in his feet. An initial neurological examination by Dr. Michael Christopher Moore (Dr. Moore) was inconclusive. Dr. Moore referred plaintiff to a neurologist and an optometrist. Plaintiff scheduled an appointment with a neurologist, Dr. Rangasamy Ramachandran (Dr. Ramachandran), for 10 April 2001.

Plaintiff was changing a drum on 6 April 2001, while acting within the scope of his employment. When plaintiff lifted the hoist off the drum, he felt a sharp pain in the lower part of his back. Plaintiff also experienced a "tingling numbness" in his feet but testified that it was a different sensation than what he had complained of on 22 March 2001. Plaintiff reported the accident to his supervisor and went to the infirmary. Plaintiff was given light duty for the remainder of the day. When plaintiff arrived at work the following day, he returned to the infirmary, complaining of lower back pain and numbness from his knees down to his feet. The infirmary nurse, Wanda Monroe, sent plaintiff to Primary Care Plus. The doctors at Primary Care Plus diagnosed plaintiff with lumbar strain and gave plaintiff light duty.

Plaintiff was told to follow up on 9 April 2001 with the company doctor for further assessment. Plaintiff testified that he did not follow up on 9 April 2001 because the doctor at Primary Care Plus "didn't do nothing to [him]."

Plaintiff missed his appointment with Dr. Ramachandran on 10 April 2001 due to illness, and rescheduled the appointment for 18 April 2001. While en route to this appointment, plaintiff was injured in an automobile accident. Plaintiff was taken to the emergency room of Cape Fear Valley Medical Center, where he was diagnosed with thoracic, lumbar, and cervical spine strain, as well as left knee sprain. Plaintiff was prescribed pain medication, was given two days off work, and was given light duty for five days.

Plaintiff was finally able to see Dr. Ramachandran on 23 April 2001. Dr. Ramachandran ordered an MRI of plaintiff's cervical spine. The MRI revealed "a large posterior osteophyte at C-4-5 with indented spinal cord on the left paracentral region." Dr. Ramachandran referred plaintiff to a neurosurgeon.

Plaintiff saw Dr. Robert Allen (Dr. Allen), a neurosurgeon, on 18 May 2001. Plaintiff did not inform Dr. Allen that plaintiff had been involved in a work-related accident on 6 April 2001 or that plaintiff had been in a car accident on 18 April 2001. Plaintiff did not list either of these events on the "Medical History Questionnaire" (the Questionnaire) that he filled out before the appointment with Dr. Allen. Plaintiff also listed the onset of the symptoms as occurring on 1 April 2001. The Questionnaire also asked whether plaintiff's visit was "related to an accident[.]" Plaintiff checked the "NO" box next to this question. Finally, Dr. Allen's notes from plaintiff's visit states: "There is no inciting event for [plaintiff's] symptoms other than he does have a previous history of a pretty major accident as a teenager back when he was around 16 or 17 years old."

Dr. Allen reviewed plaintiff's MRI and determined that plaintiff had a kyphotic deformity in the cervical spine. Dr. Allen described plaintiff's kyphotic deformity as "[i]nstead of [having] a straight spine, [plaintiff] had a very bad angulation to the spine." Dr. Allen's physical examination of plaintiff confirmed this preliminary diagnosis. Although Dr. Allen did not know the cause of the kyphotic deformity, he testified that the deformity was "quite fused," and therefore "suggestive of very chronic phenomena" or a "long-standing" condition. He believed that the deformity was either a congenital condition or "due to trauma in the remote past." Dr. Allen testified that it was

"potentially" caused by an automobile accident in which plaintiff had been involved when plaintiff was sixteen years old.

Dr. Allen performed surgery on the kyphotic deformity on 27 July 2001. Plaintiff steadily improved after the surgery, returning to work on 26 November 2001. Dr. Allen testified in his deposition that by that time plaintiff had reached maximum medical improvement. Dr. Allen estimated that plaintiff had sustained twenty percent permanent partial disability to his back.

In an opinion and award entered 24 October 2003, the Industrial Commission (the Commission) made the following pertinent findings of fact:

11. Dr. Allen opined that the accident at work could have been an exacerbating or aggravating factor in the onset of plaintiff's cervical myelopathy. He further opined that plaintiff's kyphotic deformity caused plaintiff to be more susceptible to injury after a specific traumatic incident. Dr. Allen opined that given the long-standing kyphotic deformity, any trauma such as the work-related injury or the car accident of 18 April 2001 could have been sufficient to create plaintiff's current symptoms. Dr. Allen was unable to apportion plaintiff's current condition between the automobile accident when plaintiff was 16, the work-related accident of 6 April 2001, and the auto accident on 18 April 2001.

12. Plaintiff's pre-existing condition of kyphotic deformity was materially aggravated and/or exacerbated by the work-related specific traumatic incident of 6 April 2001. Plaintiff's back condition was further materially aggravated and/or exacerbated by the automobile accident of 18 April 2001.

The Commission then made the following pertinent conclusions of law:

1. On 6 April 2001, plaintiff sustained an injury to his back as a direct result of a specific traumatic incident arising out of and in the course of employment with defendant-employer. N.C. Gen. Stat. § 97-2.

2. On 18 April 2001, plaintiff was in an automobile accident which materially aggravated and/or exacerbated his work-related injury and his pre-existing condition of kyphotic deformity. . . . In the instant case, the subsequent aggravation of

plaintiff's condition was not due to an intervening cause attributable to plaintiff's own intentional conduct. Rather, it occurred while plaintiff was on his way to receive treatment for his compensable work-related injury of 6 April 2001; therefore, the aggravation of plaintiff's condition was a direct and natural result of plaintiff's compensable injury. N.C. Gen. Stat. § 97-25.

Chairman Buck Lattimore dissented from the Commission's opinion and award, stating:

> [P]laintiff's complaints all regarded a lower back injury on April 6, 2001. Not one of four doctors deposed in this case indicated that plaintiff's lower lumbar pain allegedly experienced on April 6, 2001 definitely caused or aggravated a pre-existing condition in plaintiff's cervical spine.

The Commission awarded plaintiff: (1) temporary total disability at the rate of $620.00 per week from 23 April 2001 through 25 November 2001 and (2) permanent partial disability at the rate of $620.00 for sixty weeks for the twenty percent permanent partial disability rating to his back. Defendants appeal.

## I.

[1] We first note that plaintiff has argued in his brief that defendants' appeal should be dismissed on the ground that defendants did not timely file the proposed record on appeal. Plaintiff filed a motion to dismiss this appeal on 10 June 2004, in which he presented the same argument, verbatim. Our Court determined this matter in an order denying the motion to dismiss on 23 June 2004.

## II.

We have a "quite narrow" standard of review in workers' compensation cases. *Calloway v. Memorial Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). Our review is limited to the consideration of two issues: (1) whether the Commission's findings of fact are supported by competent evidence; and (2) whether the conclusions of law are supported by the findings of fact. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). When there is any evidence in the record that tends to support a finding of fact, the finding of fact is supported by competent evidence and is conclusive on appeal. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Likewise, "[w]e are not bound by the findings of the

Commission when they are not supported by competent evidence in the record." *English v. J.P. Stevens & Co.*, 98 N.C. App. 466, 471, 391 S.E.2d 499, 502 (1990).

[2] Defendants argue that no competent evidence supports the Commission's finding of fact that plaintiff sustained an injury by specific traumatic incident while lifting a drum hoist. We disagree. Plaintiff testified in detail at the hearing about the 6 April 2001 incident. Plaintiff stated that, while changing a drum, he "pulled on the hoist to lift it off the iron bar." Plaintiff testified that this action caused him to pull the lower part of his back and experience a sharp pain. Plaintiff then filled out an accident report and went to the infirmary, where he was put on light duty. Plaintiff returned to the infirmary the following day, complaining of lower back pain, and the infirmary nurse sent plaintiff to Primary Care Plus, where he was diagnosed with lumbar strain. Both Harold Brock, plaintiff's supervisor, and the infirmary nurse confirmed plaintiff's testimony at the hearing. We hold that this is competent evidence that supports the Commission's finding of fact and conclusion of law that plaintiff sustained a work-related injury by specific traumatic incident on 6 April 2001.

## III.

[3] Defendants next assign error to the Commission's finding of fact and conclusion of law that plaintiff's automobile accident aggravated and/or exacerbated his work-related injury. All natural consequences that result from a work-related injury are compensable under the Workers' Compensation Act. *Roper v. J.P. Stevens & Co.*, 65 N.C. App. 69, 73-74, 308 S.E.2d 485, 488 (1983); *disc. review denied*, 310 N.C. 309, 312 S.E.2d 652 (1984). Therefore, when a work-related injury leaves an employee in a weakened state that results in further injury, the subsequent injury is compensable. *Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 381-82, 323 S.E.2d 29, 31 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985). However, compensation is precluded when "the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct[.]" *Horne v. Universal Leaf Tobacco Processors*, 119 N.C. App. 682, 685, 459 S.E.2d 797, 799, *disc. review denied*, 342 N.C. 192, 463 S.E.2d 237 (1995). " 'An intervening cause is one occurring entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result.' " *Petty v. Transport, Inc.*, 276 N.C. 417, 426, 173 S.E.2d 321, 328 (1970) (citation omitted).

CANNON v. GOODYEAR TIRE & RUBBER CO.

[171 N.C. App. 254 (2005)]

Defendants argue that the Commission erred when it found that plaintiff was in the 18 April 2001 automobile accident while en route to receive treatment for his 6 April 2001 work-related injury. We find that, regardless of whether plaintiff was en route to receive treatment for his work-related injury, the automobile accident was not an independent intervening cause because it did not result from plaintiff's own intentional conduct. Rather, the evidence shows, and defendants do not contend otherwise, that the automobile accident was the result of another driver's negligence. Therefore, the accident was not an intervening cause precluding compensation for aggravation of plaintiff's work-related injury. *See, e.g., Baker v. City of Sanford*, 120 N.C. App. 783, 789, 463 S.E.2d 559, 564 (1995), *disc. review denied*, 342 N.C. 651, 467 S.E.2d 703 (1996) (since the plaintiff's brother's death "was not attributable to [the] plaintiff's own intentional conduct," the plaintiff was entitled to compensation for the exacerbation of his work-related depression); *Horne*, 119 N.C. App. at 687, 459 S.E.2d at 800-01 (finding that an automobile accident was not an independent, intervening cause of the plaintiff's injury because there was no evidence that the plaintiff's own intentional conduct caused the accident).

Furthermore, we find that competent evidence in the record supports the Commission's conclusion of law that the automobile accident aggravated plaintiff's work-related injury. Dr. Jeffrey Baldwin (Dr. Baldwin), plaintiff's chiropractor, testified that the automobile accident exacerbated the work-related injury:

The [automobile] accident . . . is a trauma to the spine. Even though the majority of the trauma was up top, any trauma to the spine, especially if an area is already damaged, . . . the spine is going to absorb that trauma to some extent throughout the course of the spine, and it's going to affect the lower back if there was a previous existing problem down there . . . .

Therefore, the Commission did not err in finding as fact and concluding as a matter of law that the automobile accident aggravated or exacerbated plaintiff's work-related injury.

IV.

[4] Defendants' next assignment of error contends that competent evidence does not support the Commission's finding of fact and conclusion of law that plaintiff's pre-existing spinal kyphotic deformity was materially aggravated or exacerbated by the 6 April 2001 work-related injury.

North Carolina law is clear that "[w]hen a pre-existing, *nondis-abling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability[.]" *Morrison v. Burlington Industries*, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981). As long as "the work-related accident 'contributed in "some reasonable degree" ' to [the] plaintiff's disability, [the plaintiff] is entitled to compensation." *Hoyle v. Carolina Associated Mills*, 122 N.C. App. 462, 466, 470 S.E.2d 357, 359 (1996) (citations omitted). However, a plaintiff must prove by a "preponderance of the evidence" that the accident was a causal factor resulting in the disability. *Ballenger v. ITT Grinnell Industrial Piping*, 320 N.C. 155, 158-59, 357 S.E.2d 683, 685 (1987).

In workers' compensation cases that involve "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Furthermore, "expert opinion testimony [that] is based merely upon speculation and conjecture . . . is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000); *see also Dean v. Coach Co.*, 287 N.C. 515, 522, 215 S.E.2d 89, 94 (1975) ("[A]n expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility.").

In *Young*, the plaintiff suffered a lumbo-sacral strain while in the course and scope of her employment. *Young*, 353 N.C. at 228, 538 S.E.2d at 913. The plaintiff was later diagnosed with fibromyalgia and argued that the work-related injury was the cause of the fibromyalgia. *Id.* at 229-30, 538 S.E.2d at 914. Our Supreme Court held that there was no competent evidence to support a finding of causation, since the doctor's testimony on which the plaintiff relied "was based entirely upon conjecture and speculation." *Id.* at 231, 538 S.E.2d at 915. Although the doctor testified that the work-related " ' "injury could have or would have aggravated or caused the fibromyalgia[,]" ' " *id.* at 233, 538 S.E.2d at 916 (quoting *Young v. Hickory Bus. Furn.*, 137 N.C. App. 51, 56, 527 S.E.2d 344, 348 (2000)), the Court stated that " 'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Young*, 353 N.C. at 233, 538 S.E.2d at 916.

## CANNON v. GOODYEAR TIRE & RUBBER CO.

[171 N.C. App. 254 (2005)]

Our Supreme Court recently reaffirmed its holding in *Young* when it adopted the dissents from this Court's opinions in *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 600 S.E.2d 501 (2004) (Steelman, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005), and *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 603 S.E.2d 552 (2004) (Hudson, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 359 N.C. 403, 610 S.E.2d 374 (2005). In *Edmonds*, the plaintiff suffered from pre-existing kidney problems. 165 N.C. App. at 812-13, 600 S.E.2d at 503. As the result of a compensable work-related injury, the plaintiff was placed on non-steroidal anti-inflammatory drugs (non-steroidals). *Id.* at 812, 600 S.E.2d at 502-03. The plaintiff claimed that the non-steroidals exacerbated her pre-existing kidney problems, resulting in renal failure, and sought compensation from her employer. *Id.* at 813, 600 S.E.2d at 503. The dissent adopted by the Supreme Court found that the plaintiff failed to prove that the administration of non-steroidals for her work-related injury caused her renal failure. *Id.* at 819, 600 S.E.2d at 506. The dissent relied on the Commission's finding of fact that the expert testimony only indicated that the non-steroidals "possibly" or "could or might" have worsened the plaintiff's kidney problems:

> 19. . . . [The expert] could not say that it was probable; he could only say that it was possible. He stated he could not give an opinion, to a reasonable degree of medical certainty, without knowing all the information surrounding the drugs. [The expert] testified that [the] plaintiff's kidney disease could be attributed to a number of factors, including diabetes, hypertension, a drug source injury, or a blunt trauma injury.

*Id.* at 817-18, 600 S.E.2d at 506. The dissent concluded that "[t]his testimony does not rise above a guess or mere speculation" and therefore was not competent evidence to show causation. *Id.* at 818, 600 S.E.2d at 506.

In contrast, the dissent adopted from *Alexander* found that competent evidence supported the plaintiff's claim that a work-related injury to his foot caused a ruptured disk in the plaintiff's back. 166 N.C. App. at 571, 603 S.E.2d at 558. The dissent stated that although "it [wa]s possible to find a few excerpts [of the plaintiff's doctor's testimony] that might be speculative[,] . . . much of the evidence reveals that the doctor expressed her opinions repeatedly and without equivocation." *Id.* at 573, 603 S.E.2d at 558. Therefore, since the doctor did

testify that it was "likely" that the plaintiff's back injury occurred during the work-related accident, competent evidence supported the Commission's conclusion that the work-related accident caused the back injury. *Id.*

Based on these holdings, it appears that our Supreme Court has created a spectrum by which to determine whether expert testimony is sufficient to establish causation in worker's compensation cases. Expert testimony that a work-related injury "could" or "might" have caused further injury is insufficient to prove causation when other evidence shows the testimony to be "a guess or mere speculation." *Young*, 353 N.C. at 233, 538 S.E.2d at 916; *see also Edmonds*, 165 N.C. App. at 818, 608 S.E.2d at 506. However, when expert testimony establishes that a work-related injury "likely" caused further injury, competent evidence exists to support a finding of causation. *Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558.

We find that, like in *Edmonds*, the expert testimony in this case "does not rise above a guess or mere speculation." *Edmonds*, 165 N.C. App. at 818, 600 S.E.2d at 506. Dr. Allen testified that the work-related injury "*could have* been an exacerbating or aggravating factor" in plaintiff's kyphotic deformity, but further testified that he was uncertain that this was the case:

A What pushed [the kyphotic deformity] over the edge, *I'm not sure if there was anything.* . . . I think what he is describing as his presentation, how it's due to any one particular event, I think is not clear.

. . . .

Q So it is possible with this condition that, even if the Industrial Commission finds that [plaintiff] did suffer an on-the-job injury on April the 6th, 2001, that it could have *nothing to do* with the condition that you treated him for here?

A Correct.

Q And there's no way for you to determine whether it was totally degenerative or something else specifically caused it?

A Now I think that the evidence would suggest that he had a major kyphotic deformity present as the major problem. *Whether some incident pushed it over the edge, I think, is less clear.*

(emphases added).

Dr. Allen's testimony indicates that he was unable to go beyond a guess or speculation in determining whether plaintiff's work-related injury aggravated and/or exacerbated plaintiff's kyphotic deformity. Rather, Dr. Allen's testimony shows that he was unsure as to whether any single event caused the onset of plaintiff's symptoms at all. Further, Dr. Allen testified that plaintiff's 6 April 2001 work-related injury "could have nothing to do with" the kyphotic deformity. The Commission's findings of fact reflect Dr. Allen's uncertainty:

> 11. Dr. Allen opined that the accident at work *could have been* an exacerbating or aggravating factor in the onset of plaintiff's cervical myelopathy. . . . Dr. Allen opined that given the long-standing kyphotic deformity, *any trauma such as the work-related injury or the car accident of 18 April 2001 could have been sufficient to create plaintiff's current symptoms.*

(emphases added).

Under *Young* and *Edmonds*, plaintiff has failed to carry his burden of proving that his work-related injury was a causal factor in his kyphotic deformity. Furthermore, Dr. Allen's testimony never indicated that, in his opinion, it was "likely" that the work-related injury caused an aggravation and/or exacerbation of plaintiff's kyphotic deformity. *See Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. Therefore, we hold that the Commission's finding of fact that the work-related injury aggravated and/or exacerbated plaintiff's kyphotic deformity was not supported by competent evidence. We remand to the Commission for new findings of fact and conclusions of law in accordance with the correct legal standard. *See Ballenger*, 320 N.C. at 158, 357 S.E.2d at 685 (stating that "[w]hen the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard."); *see also Edmonds*, 165 N.C. App. at 817, 600 S.E.2d at 506 (Steelman, J., dissenting) ("It is not the role of the appellate courts to sift through the evidence and find facts that are different from those actually found by the Commission.").

[5] We vacate the Commission's 24 October 2003 opinion and award. We remand for findings of fact and conclusions of law applying the correct legal standard. We also remand for a determination as to the proper amount of compensation to which plaintiff is entitled for his 6 April 2001 work-related injury and its aggravation and/or exacerbation by the 18 April 2001 automobile accident.

**[6]** We deem abandoned those assignments of error not addressed in defendants' brief. N.C. R. App. P. 28(b)(6).

Vacated and remanded.

Judges WYNN and TYSON concur.