WANDA FIPPS, Employee, Plaintiff-Appellee
v.
BABSON AND SMITH TRUCKING, Employer, and KEY RISK MANAGEMENT SERVICES, Carrier, Defendants-Appellants
No. COA07-1361
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Brumbaugh, Mu & King, P.A., by Nicole D. Wray, for plaintiff-appellee.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Susan J. Vanderweert, for defendants-appellants.
CALABRIA, Judge.
Babson and Smith Trucking ("defendant-employer") and Key Risk Insurance Company (collectively, "defendants") appeal from an Opinion and Award of the North Carolina Industrial Commission ("the Commission") concluding Wanda Fipps ("plaintiff") sustained a compensable injury by accident to her cervical spine arising out of and in the course of her employment. We affirm. The record shows that on 1 March 2003, plaintiff began her employment with the defendant-employer as a dump truck driver. Mr. Sammie Smith ("Sammie Smith") and his son, Mr. Donald Smith ("Donald Smith"), are co-owners of defendant-employer's business. Plaintiff's job duties involved driving a dump truck to various locations, hauling materials from the locations and lowering and raising the bed of the truck using a lever that was adjacent to the driver's seat. Before plaintiff began her work day, she first drove to defendant-employer's location and retrieved the dump truck and then drove the dump truck to the work site.
On or about 13 October 2003, as plaintiff was driving the dump truck, she hit "something" in the road causing her to bounce in her seat and strike her head against the ceiling of the cab. Plaintiff stopped operating the dump truck for a few minutes and experienced a headache and soreness in her neck. On the date of the incident plaintiff was fifty-two years old. On 18 October 2003, plaintiff voluntarily resigned her position with defendant-employer because she could not use her right arm due to the pain she experienced and therefore was no longer able to operate the dump truck.
Since plaintiff believed defendant-employer did not possess workers' compensation insurance, she did not immediately seek medical attention. However, the pain in plaintiff's right arm and shoulder continued, and on 22 October 2003, plaintiff attempted to schedule an appointment with Dr. Gregory F. Schimizzi ("Dr. Schimizzi"), a rheumatologist, who had previously treated plaintiff for arthritis. Since plaintiff arrived late for her appointment with Dr. Schimizzi, he was unable to examine her, however, plaintiff was examined the same day by Jason Fedak, a physician assistant for Dr. David Esposito ("Dr. Esposito"). Plaintiff was diagnosed with right shoulder impingement syndrome, given an injection of Cortisone, and told to follow up with Dr. Schimizzi. Plaintiff also was told she could return to work on 30 October 2003.
On 29 October 2003, plaintiff was evaluated by Dr. Schimizzi and complained of increasing right shoulder pain occurring for the last several weeks. Dr. Schimizzi's evaluation revealed that plaintiff had a right acromioclavicular joint inflammation and pain. He gave plaintiff an injection in that joint, prescribed medication, ordered an MRI of her cervical spine and recommended she avoid strenuous use of her shoulder by not working. On 10 November 2003, Dr. Schimizzi reviewed plaintiff's MRI results and opined that the results showed plaintiff had "multi-level right paracentral disc and osteophyte complexes with mild to moderate cord compression, and right-sided foramenal stenosis that was greatest at C5-6 where the right neuroforamen was completely occluded." Dr. Schimizzi recommended that plaintiff seek treatment from neurosurgeon Dr. George VanBuren Huffmon, III ("Dr. Huffmon").
On 2 December 2003, plaintiff was evaluated by Dr. Huffmon at Atlantic Neurosurgical and Spine Specialists due to neck pain and low back pain. At the visit, plaintiff reported to Dr. Huffmon that she began having neck pain that arose from an incident when she struck her head on the ceiling of the cab of the dump truck she was driving for the defendant-employer. After reviewing the MRI scan, Dr. Huffmon diagnosed plaintiff with cervical spondylosis and stenosis at C4-C7. Dr. Huffmon also noted that plaintiff had been disabled from work since 10 October 2003.
On 12 January 2004, plaintiff was evaluated by Dr. John H. Knab ("Dr. Knab") at the Center for Pain Management. During the evaluation, plaintiff reported the work-related injury that occurred on 10 October 2003 which caused an immediate onset of pain. Plaintiff reported pain in her neck, shoulder, and right arm. Dr. Knab administered epidural steroid injections to plaintiff's neck on 14 January 2004 and 11 February 2004.
Plaintiff continued to see Dr. Huffmon for follow-up visits. During a follow-up visit on 26 August 2004, plaintiff reported to Dr. Huffmon that she continued to experience neck pain which radiated down her right arm, and also was experiencing numbness and tingling in her right fingers. She also experienced occasional neck pain which radiated down her left arm. A cervical myelogram revealed stenosis at C3-C7, with significant foraminal stenosis on the right at 3-4, and disc and bone spurs. Dr. Huffmon recommended that plaintiff receive selective nerve root blocks at C3-7 to determine which levels were the worst. Between 28 October 2004 and 14 December 2004, plaintiff received a series of cervical nerve root blocks performed by Dr. Knab at the Center for Pain Management. On 8 February 2005, plaintiff returned to Dr. Huffmon's office due to right neck pain radiating down her right arm and numbness in her right hand. Plaintiff also complained of low back pain radiating down her left leg. Dr. Huffmon ultimately recommended surgery.
On 30 March 2005, defendant-employer's carrier denied plaintiff's claim due to (I) plaintiff's failure to report the claim within thirty days pursuant to N.C. Gen. Stat. § 97-22 (2005); (II) plaintiff did not suffer an injury by accident; and (III) plaintiff's injuries were related to a pre-existing condition. On 13 December 2005, Deputy Commissioner J. Brad Donovan ("Deputy Commissioner Donovan") determined that plaintiff sustained an injury by accident arising out of her employment. Deputy Commissioner Donovan ordered defendants to pay all existing and future medical expenses incurred as a result of plaintiff's compensable injury, including the surgery recommended by Dr. Huffmon, as well as temporary total disability benefits from the date of the accident until the Commission decided otherwise. Defendants appealed to the Commission. On 21 November 2006, the Commission entered an order declaring that defendants had shown good grounds to receive further evidence. The Commission reopened and remanded the case to Deputy Commissioner Donovan for receipt of further evidence regarding whether plaintiff's disc herniation at C5-C6 and the surgery recommended were related to the incident that plaintiff described occurring on or about 13 October 2003.
On 20 August 2007, after reviewing new evidence, the Commission entered an Opinion and Award concluding that plaintiff sustained an injury to her cervical spine by accident arising out of her employment with defendant-employer. The Commission awarded plaintiff temporary total disability benefits in the amount of $266.68 per week beginning 18 October 2003 and medical compensation for all existing and future medical expenses incurred as a result of plaintiff's compensable injury, including the surgery recommended by Dr. Huffmon. Defendants appeal from the opinion and award of the Commission.
On appeal, defendants contend the Commission erred by (I) concluding that plaintiff met her burden of proving she sustained an injury by accident and (II) determining medical evidence presented by plaintiff was sufficient to show causation.

I. Standard of Review
Our Supreme Court has "repeatedly held `that our Workers' Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction.'" Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting Hollman v. City of Raleigh, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968)). In reviewing the Commission's decision, our case law readily establishes that "(1) the full Commission is the sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citation omitted). Our review "goes no further than to determine whether the record contains any evidence tending to support the finding." Adams, 349 N.C. at 681, 509 S.E.2d at 414 (quotation omitted). "[E]vidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Id. (citation omitted). The Commission's findings of fact are binding "even though there be evidence that would support findings to the contrary." Id. (quotation omitted). However, we review de novo the Commission's conclusions of law. Bond v. Foster Masonry, Inc., 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000).

II. Injury by Accident
Defendant first argues that the Commission erred by concluding that plaintiff presented sufficient competent evidence to satisfy her burden of proof showing she sustained an injury by accident. We disagree.
"The plaintiff in a workers' compensation case bears the burden of initially proving each and every element of compensability." Whitfield v. Lab. Corp. of Am., 158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). For a claimant to receive benefits under our Workers' Compensation Act, the injury must result from an "accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2003). The Commission determined plaintiff sustained an injury by accident to her cervical spine arising out of and in the course of her employment with defendant-employer. With respect to back injuries, in 1983, the Workers' Compensation Act was amended as follows:
"Injury and personal injury" shall mean only injury by accident arising out of and in the course of the employment. . . . With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.
N.C. Gen. Stat. § 97-2(6) (2003).
The addition of the phrase "specific traumatic incident" by the General Assembly eliminated an employee's burden of showing "an external cause or unusual conditions in order for [the employee] to receive compensation for a back injury. Instead, what may be shown is that the back injury arose in the course of the employment and that the injury was `the direct result of a specific traumatic incident of the work assigned.'" Caskie v. R.M. Butler & Co., 85 N.C. App. 266, 268, 354 S.E.2d 242, 244 (1987) (quoting N.C. Gen. Stat. § 97-2(6)). "However, if there is no `specific traumatic incident,' a claimant should still be provided coverage if he or she meets the definition of `injury by accident' contained in the first sentence of [N.C. Gen. Stat. §] 97-2(6), as interpreted by our courts." Id. "A specific traumatic incident need not involve unusual conditions or a departure from the claimant's normal work routine." Lettley v. Trash Removal Service, 91 N.C. App. 625, 627, 372 S.E.2d 747, 749 (1988). Our case law defines a back injury to be from an "injury by accident" where the injury is "the result of an unlooked for and untoward event not expected or designed by the injured employee, and is not the result of inherent weakness and not an ordinary and expected incident of employment."Caskie, 85 N.C. App. at 268, 354 S.E.2d at 244. To satisfy the burden of showing she sustained an injury by accident, it is sufficient for plaintiff to point to a series of contemporaneous events which caused her back injury. Richards v. Town of Valdese, 92 N.C. App. 222, 225, 374 S.E.2d 116, 118-19 (1988).
Defendants assign error to the Commission's following findings of fact:
3. At the hearing before the Deputy Commissioner, plaintiff testified that on October 13, 2003, plaintiff was driving her truck and hit "something" in the road causing her to bounce in her seat and strike her head against the roof of the cab. Plaintiff stopped the truck for a few minutes and experienced a headache and soreness in her neck. At the end of the day, plaintiff reported the incident to Mr. Sammie Smith. No report was completed regarding the incident and Mr. Smith testified that plaintiff never told him of the incident.
. . . .
5. The Full Commission finds plaintiff's testimony to be credible and gives greater weight to her testimony than that of Mr. Donald Smith.
6. On October 18, 2003, plaintiff voluntarily resigned her position with defendant-employer because she could not use her right arm due to pain and as such was no longer able to operate the dump truck.
. . . . 10. Plaintiff returned to Dr. Schimizzi on November 17, 2003, to review the results of the MRI. . . . Dr. Schimizzi recommended that plaintiff seek treatment from neurosurgeon, Dr. George Huffmon.
11. On December 2, 2003, plaintiff presented to Dr. Huffmon with complaints of neck problems. Plaintiff provided a history consistent with the October 13, 2003 incident. Plaintiff noted that since the date of the incident, she was experiencing pain in her neck traveling to her right shoulder and right arm. She also had numbness and tingling into the right hand and pain in her low back and left leg and foot. Dr. Huffmon noted a large herniated dis[c], a bone spur at C5-6 with squeezing on the canal at C4-5 and C6-7. Given what he characterized as "the severity of the injury," he focused his treatment on plaintiff's neck.
. . . .
20. Although Dr. Schimizzi testified that he did not record any details of plaintiff's work-related incident on October 13, 2003, it did not mean that she did not tell him. He did testify, however, that he recalled plaintiff telling him the seat on which she was sitting at the time of her injury had a defective shock absorber. Dr. Schimizzi further testified that he had no reason to doubt plaintiff's [veracity].
21. At the hearing before the Deputy Commissioner, plaintiff testified that she has never filed a workers' compensation claim and was unaware that she needed to complete a form to report her injury. She further testified that she did not immediately report to Dr. Schimizzi that her injury was work-related because she thought that she "just pulled something in her arm" and that her discomfort was due to a worsening of her arthritis. It was not until later when she learned that her condition was not due to a deterioration of her arthritis that she attributed her condition to her accident on October 13, 2003. 22. The Full Commission finds plaintiff's testimony to be credible.
We now consider the evidence in support of these findings, and determine whether plaintiff presented sufficient evidence to show she suffered an injury from an "accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6). A careful review of the record shows the following: When plaintiff filed Form 18 with the Industrial Commission, she stated on the Form that she sustained an injury because the dump truck she was driving "hit a hole and [she] was thrown out of her seat." At the hearing before the Commission, plaintiff testified that she sustained an injury to her neck after the dump truck she was driving hit "dirt" or "something in the road." When plaintiff returned to defendant-employer's place of business the evening of the incident, plaintiff reported to Sammy Smith she was injured earlier in the day.
Furthermore, Dr. Schimizzi testified that on more than one occasion, plaintiff described to him the work-related event that caused her head to bump the ceiling of the cab in the dump truck she was driving. Dr. Schimizzi opined that he believed plaintiff's description of the incident in October 2003 to be credible and that "he had no reason to doubt her." On 2 December 2003, when plaintiff was initially evaluated by Dr. Huffmon, plaintiff told Dr. Huffmon she drove a dump truck and was injured as a result of striking her head on the ceiling of the cab as a result of driving down a "very bumpy road." The dump truck also had a dysfunctional safety belt and the safety belt contributed to her injury. She told him she began having neck pain that radiated down her right shoulder as a result of the incident.
Defendants argue there is no credible evidence that an injury by accident occurred since the only evidence that supports the occurrence of an accident is plaintiff's testimony, which was uncorroborated by any other evidence. Defendants argue that plaintiff's statements to Dr. Huffmon that the dump truck safety belt was malfunctioning on the date of the incident was refuted by Donald Smith's testimony. Donald Smith testified that the seat and safety belt in the cab of the dump truck were functional at the time of the incident, and that the dump truck's seat had "air-ride" shock absorbers to provide protection against any jarring. Donald Smith also stated that plaintiff complained of assorted pains and medical problems on a regular basis. Furthermore, Sammy Smith testified that plaintiff never reported to him that she was injured due to a work-related incident.
Defendants' arguments regarding this issue relate to plaintiff's credibility. We reiterate our standard of review. On appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Anderson v. Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). The Commission's duty is "to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it. As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." Rackley v. Coastal Painting, 153 N.C. App. 469, 472, 570 S.E.2d 121, 124 (2002) (emphasis supplied) (internal citations omitted).
In the case sub judice, plaintiff's testimony at the hearing before the Commission was consistent with the cause of her injury she previously stated on Form 18. In addition, plaintiff consistently reported to her treating physicians she sustained an injury to her neck while driving a dump truck for defendant-employer. Since it is not our duty to judge the credibility of the witnesses, we conclude plaintiff's testimony is competent evidence to support the Commission's findings of fact. Accordingly, these findings of fact support the Commission's conclusion of law that plaintiff sustained an injury by accident to her cervical spine arising out of and in the course of her employment with defendant-employer. This assignment of error is overruled.

III. Causation
Defendants next contend that the Commission erred by concluding that the medical evidence presented by plaintiff was sufficient to prove a causal connection existed between plaintiff's employment and her injury. We disagree.
In workers' compensation cases, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between employment and injury. Holley v. ACTS, Inc., 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003). In workers' compensation cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation." Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000).
In the case sub judice, on 27 April 2007, after the Commission reopened and remanded the case for the taking of additional testimony regarding the issue of whether plaintiff's disc herniation at C5-C6 and the recommended surgery were related to the October 2003 incident, defendants deposed Dr. Charles Haworth ("Dr. Charles Haworth"), the neurosurgeon who evaluated plaintiff in 1999. Plaintiff reported to Dr. Haworth that she suffered from headaches and neck pain for approximately nine to ten months. She also reported numbness in her right hand and pain that radiated down her dorsal forearm of her right arm. Dr. Haworth testified that since the radiologists who read plaintiff's report believed plaintiff had a small disk or spur at C5-6, he ordered a myelogram CT scan of her neck and an updated EMG to evaluate her condition.
Therefore, the record reflects that plaintiff suffered a "pre-existing, nondisabling, non-job-related condition" before her accidental injury. Cannon v. Goodyear Tire & Rubber Co., 171 N.C.App. 254, 262, 614 S.E.2d 440, 445, disc. rev. denied, 360 N.C. 61, 621 S.E.2d 177 (2005) (emphasis omitted).
In Cannon, this Court explained disability compensation regarding a pre-existing condition as follows:
"when a pre-existing, nondisabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability[.]" As long as "the work-related accident `contributed in "some reasonable degree"' to [the] plaintiff's disability, [the plaintiff] is entitled to compensation." However, a plaintiff must prove by a "preponderance of the evidence" that the accident was a causal factor resulting in the disability.
Id. at 262, 614 S.E.2d at 445 (alterations in original) (quotations and internal citations omitted).
After defendants deposed Dr. Haworth, on 24 May 2007, Dr. Huffmon was re-deposed. Thus, Dr. Huffmon was deposed on two separate occasions, once in 2005 and once in 2007. During his first deposition in 2005, Dr. Huffmon was not aware that plaintiff previously was evaluated by Dr. Haworth and was not aware of plaintiff's prior medical records. In his first deposition, Dr. Haworth testified to a reasonable degree of medical certainty that plaintiff's work-related incident caused her neck injury. During his second deposition, Dr. Huffmon was shown plaintiff's prior medical records for the first time and testified as follows:
Q: And . . . my understanding is, that this is the first time you have seen these records, and that the plaintiff never told you herself, . . . that she had treated with Dr. Haworth?
A: I have nothing in the chart stating that she did. I can't tell you for sure that she did not but I have nothing in the chart stating she'd ever seen Dr. Haworth.
Q: And, your prior opinion that to a reasonable degree of medical certainty, would you stand by your 2005 deposition testimony regarding whether or not there was a reasonable certainty that this incident in October 2003 was responsible for her condition and need for surgery?
A: . . . I stand by my testimony that the accident that was described to me could have made her injuries symptomatic; and, that, if it did occur as she stated it did, it probably did play somewhat of a role. Do I think it's a hundred percent responsible? Absolutely not, because she was looking at a, at least, two level anterior discectomy and fusion, from what I read in the previous records of Dr. Haworth, anyhow.
In addition, Dr. Esposito testified regarding plaintiff's work-related incident as follows:
Q: For purposes of this question, Doctor, I'm going to ask you a hypothetical question, and I want you to assume that the following facts are true. . . . and at that hearing [plaintiff] testified that . . . on or about October 13 of 2003 while she was performing her job duties with [defendant-employer], she was driving a truck, going down a bumpy road when she hit something in the road causing her truck seat to bounce her up high enough that she hit the top of her head on the cab of the truck; and that after that she suffered from neck pain, headaches, as well as increased shoulder pain. Assuming those facts to be true, do you have an opinion as to a reasonable degree of medical certainty as to whether that incident as she described it could have aggravated any underlying pre-existing shoulder problems that she had?
. . . .
A: Basically, could there be a causal relationship between a pre-existing inflaming or irritating or worsening of a pre-existing injury and that bump?
Q: Yes, sir.
A: Yes, there is a chance that going over that bump could have aggravated a pre-exiting injury.
Q: Can you say that to a reasonable degree of medical certainty?
A: Yes.
Moreover, Dr. Schimizzi, plaintiff's treating physician for her rheumatoid arthritis, testified that he has treated plaintiff for various diseases since 1998. When plaintiff first visited his practice in 1998, he ultimately diagnosed plaintiff with having, inter alia, degenerative disc disease of her cervical spine and right shoulder impingement. Dr. Schimizzi provided treatment for these diagnoses. In a medical note dated 12 April 2005, Dr. Schimizzi opined that the October 2003 incident aggravated plaintiff's degenerative disc disease. Dr. Schimizzi testified regarding the relationship between plaintiff's work-related incident and her injury as follows:
Q: Can you just elaborate further on your opinion, and the findings that you saw on the MRI with regards to your treatment of her from 1998 through 2003 that led you to believe that's an aggravation of a pre-existing condition?
A: Okay. I think it was because of her description of the event. This wasn't the first time she described it to me. I remember she described it to me before this particular visit, but the nature of her injury in which she struck her head on the top of the cab and then the exacerbation of the shoulder and neck pain following that certainly seemed to me to be a reasonable  reasonably related event to the aggravation of her symptoms.
. . . .
Q: Is it fair to say that her symptoms had gotten progressively worse from the last time you saw in her in 2002 from when she presented in 2003?
A: Yes, they were definitely worse. I would not have ordered the MRI had they not been worse.
Q: And, Dr. Schimizzi, do you have an opinion to a medical degree of certainty whether the incident as she described, striking her head on the top of the cab, again, assuming that fact is in fact true, was an aggravation or exacerbation of a pre-existing condition?
. . . .
A: Yes.
Q: What is your opinion?
A: I believe that an individual who has intervertebral degenerative disc disease of the cervical spine and neuroforamenal encroachment already, who is then subjected to another traumatic event involving the head and neck, such as a blunt impact, would aggravate . . . her cervical spine disease, and could actually have compressive neuropathy or worsening herniated discs, etcetera.
Thus, the testimony presented by the medical experts is sufficient evidence to show plaintiff's work-related incident contributed in "some reasonable degree" to plaintiff's disability. Id. Accordingly, we conclude that the evidence before the Commission met the reasonable degree of medical certainty standard necessary to establish a causal link between plaintiff's employment and cervical spine injury. This assignment of error is overruled.

IV. Conclusion
We conclude that plaintiff met her burden of showing she sustained an injury by accident, and that this accident caused her to suffer an aggravation of a pre-existing condition. As such, competent evidence exists to support the Commission's findings of fact that plaintiff sustained an injury by accident to her cervical spine arising out of and in the course of her employment with defendant-employer due to a work-related incident that occurred in October 2003. We further conclude the Commission's findings of fact support its conclusions of law to award plaintiff workers' compensation benefits.
Affirmed.
Chief Judge MARTIN and Judge STROUD concur.
Report per Rule 30(e).