***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing and in the Pre-Trial Agreement as:
 STIPULATIONS *Page 2 
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter of this claim. All parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At the time of Plaintiff's injury, on August 29, 2008, Defendant-Employer employed three or more employees, and the employee-employer relationship existed between Plaintiff and Defendant-Employer.
3. ACE USA is the carrier on the risk under the Act at all times material to this claim.
4. On August 29, 2008, Plaintiff sustained an injury by accident to her right shoulder arising out of and in the course of her employment with Defendant-Employer.
5. Plaintiff's average weekly wage on the date of her injury by accident was $1,270.67.
6. As provided by N.C. Gen. Stat. § 97-18(b), Defendants have paid Plaintiff (1) compensation for temporary total disability at the rate of $786.00 per week from October 31, 2008 through December 21, 2008 and from July 11, 2009 through the present; and (2) compensation for temporary partial disability at varying rates from September 14, 2008 through October 30, 2008 and from December 23, 2008 through July 10, 2009.
7. The parties stipulated to the following documents being received into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Executed Pre-Trial Agreement;
 b. Stipulated Exhibit Two: North Carolina Industrial Commission forms and filings; *Page 3 
 c. Stipulated Exhibit Three: "Statement from Employee Reporting Initial Injury/Incident" dated September 8, 2008 and signed by Plaintiff;
 d. Stipulated Exhibit Four: "Accident/Illness/Incident Investigation" form and "Eden Brewery Recordable/Restricted Incident" form;
 e. Stipulated Exhibit Five: "Clinic Visit Progress Notes Report" forms and accompanying documentation, including various e-mails;
 f. Stipulated Exhibit Six: Form 22;
 g. Stipulated Exhibit Seven: "Total Dollars — Days, Hours, Daily Detail" forms from February 5, 2007 through July 10, 2009 and "Absence Calendar" from January 2, 2007 through October 31, 2009;
 h. Stipulated Exhibit Eight: "PDL Job Description" dated December 1, 2007;
 i. Stipulated Exhibit Nine: Plaintiff's medical records;
 j. Stipulated Exhibit 10: Transcript of Plaintiff's recorded statement.
 *********** ISSUES
1. Whether Plaintiff's left shoulder condition is a compensable consequence of her admittedly compensable right shoulder injury?
2. If so, to what further compensation is Plaintiff entitled?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff is 53 years old and was born on November 29, 1957. Plaintiff has a high school diploma, and took some college courses. Plaintiff's work history includes work in the textile industry.
2. Plaintiff began working for Defendant-Employer in its Eden brewery in March 2003 as a packer operator. The duties of a packer operator included operating and tending to machines and conveyors, and regularly lifting and handling materials weighing up to about 50 pounds.
3. On or about August 29, 2008, Plaintiff sustained an injury by accident to her right shoulder, caused by running a packing machine in an unusual manner for several weeks. Plaintiff first noticed pain in her right shoulder on August 29, 2008, but continued to work. On September 8, 2008, Plaintiff reported the injury to her supervisor because her right shoulder pain kept getting worse.
4. Defendant-Employer sent Plaintiff to Dr. Douglas Adams, and she first saw him on September 11, 2008. Plaintiff complained primarily of her right shoulder but also told Dr. Adams that her left arm was sore. Dr. Adams noted that Plaintiff stated she started having a lot of pain in her upper right arm and that her left arm had now become sore due to not using left her arm. Dr. Adams diagnosed Plaintiff with a right shoulder/neck strain, prescribed medication, and instructed Plaintiff not to do overhead work. Following an MRI on September 19, 2008, Dr. Adams referred Plaintiff to an orthopedic surgeon.
5. On September 24, 2008, Plaintiff presented to Dr. Kevin Mark Supple, an orthopedic surgeon with a specialty in shoulders. Dr. Supple devotes 70 percent of his current practice to the treatment of shoulder conditions. Dr. Supple's impression upon Plaintiff's first visit was that she had right shoulder impingement and bursitis with MRI evidence of a partial *Page 5 
thickness rotator cuff tear. Dr. Supple injected Plaintiff's right shoulder and restricted her from using the right arm, but allowed her to continue working with her right arm in a sling.
6. Defendants accepted Plaintiff's right shoulder condition as compensable via a Form 60 dated October 9, 2008.
7. On October 23, 2008, Plaintiff gave a recorded statement to Defendant-Carrier's claims adjuster. When Plaintiff was asked if she had any problems with her left shoulder, she responded, "No. It's just sore where I've been using it a lot compensating for the right."
8. On October 31, 2008, Plaintiff underwent right shoulder surgery with Dr. Supple. The procedure included extensive synovectomy, biceps tendon tenotomy, debridement of extensive labral tear, subacromial decompression and bursectomy, distal clavicle resection, and rotator cuff repair. After the surgery, Plaintiff underwent physical therapy.
9. On December 15, 2008, Dr. Supple instructed Plaintiff to discontinue use of the sling on her right arm, and he released her to return to light duty work on December 22, 2009, for a maximum of eight hours per day, 40 hours per week, with no use of her right arm and no overhead work.
10. On Plaintiff's next visit to Dr. Supple on January 14, 2009, her right shoulder was continuing to improve, so Dr. Supple allowed her to continue with light duty work, still limited to eight hours per day, 40 hours per week, with a five-pound lifting limit and no overhead use of her right arm.
11. On February 4, 2009, Plaintiff saw Dr. Supple for evaluation of her left shoulder. She complained of increased left shoulder pain over approximately the preceding month and felt "as though she has been favoring her right shoulder and overusing her left shoulder having increasing pain as a result." Dr. Supple assessed Plaintiff's left shoulder with impingement *Page 6 
syndrome. He injected Plaintiff's left shoulder and instructed her to continue with physical therapy for both shoulders. Dr. Supple continued Plaintiff on light duty with the previous limitations on hours worked, a five-pound lifting limit, and no overhead use of either arm.
12. On February 18, 2009, Dr. Supple recommended a left shoulder MRI, which showed a full thickness or near-full thickness tear of the supraspinatus tendon. On March 2, 2009, Dr. Supple recommended a left shoulder arthroscopy, but the procedure was delayed because Defendant-Carrier required a second opinion.
13. On April 9, 2009, Plaintiff presented for a second opinion examination with Dr. John Lee Graves, an orthopedic surgeon with a general orthopedic practice. Plaintiff saw Dr. Graves only this one time. Dr. Graves agreed that Plaintiff needed the proposed left shoulder surgery, and he opined that Plaintiff's left shoulder condition was "clearly caused by an overuse-type syndrome at work where she continues to flip cartons overhead and having to raise the left arm above the 90 degree plane and so in that sense is a work related problem." However, Dr. Graves later wrote that "if (Plaintiff's) job is chronic and continuous overhead use of the left shoulder then I think you could argue that this is a chronic condition caused by overhead use of the left arm. If her job does not cause her to use her arm overhead then I think this would be very difficult to be related to her work-related condition. I do not think that it is directly related to her right shoulder surgery."
14. On May 26, 2009, Defendant-Carrier wrote to Dr. Supple to solicit his opinion on whether there was a causal relationship between Plaintiff's left shoulder condition for which he was recommending surgery and her compensable right shoulder injury. On May 28, 2009, Dr. Supple responded, stating that he believed based on his experience treating shoulder patients that Plaintiff had developed an overuse inflammation in her left shoulder during her convalescence *Page 7 
from the right shoulder surgery, during which time she had been unable to use her right arm in her daily activities. As such, Dr. Supple further responded, he believed that the surgery he had recommended for Plaintiff's left shoulder was causally related to her compensable right shoulder injury.
15. Defendant-Carrier formally denied liability for the left shoulder on July 24, 2009 on ground that it was not "causally related to alleged overuse brought about due to the compensable right shoulder injury."
16. On October 8, 2009, Plaintiff underwent left shoulder surgery with Dr. Supple. The surgery included extensive synovectomy and lysis of adhesions, debridement of a labral tear, chondroplasty of the humeral head and glenoid, biceps tenotomy, subacromial decompression and bursectomy, distal clavicle resection, and rotator cuff repair. Dr. Supple's post-surgical diagnoses were chronic impingement syndrome, rotator cuff tear, acromioclavicular joint arthrosis, adhesive capsulitis, biceps tendon tear, labral tear, and chondromalacia of the humeral head and glenoid. Many, but not all, of the surgical findings were degenerative in nature. After the surgery, Plaintiff again underwent physical therapy.
17. There is no evidence of record suggesting Plaintiff had any left shoulder symptoms before she injured her right shoulder on August 29, 2008.
18. Dr. Supple opined, and the Full Commission finds as fact, that the need for Plaintiff's left shoulder surgery resulted from the right shoulder injury. Dr. Supple testified that his opinion had not changed since his May 28, 2009 opinion letter, and that his opinion would not change even assuming that: (1) Plaintiff had soreness in her left shoulder off and on beginning at least by October 23, 2008, and until January 2009, when the condition worsened and remained that way until his (Dr. Supple's) February 4, 2009 examination; (2) Plaintiff *Page 8 
complained of some left shoulder soreness to Dr. Adams on September 11, 2008; (3) Plaintiff felt a pop in her left shoulder, followed by sharp pain, when pulling up her right arm with her left arm using a pulley in physical therapy in January 2009; and/or (4) Plaintiff significantly restricted her normal activities of daily living, hired someone to do yard work and cleaning at her home, had help from her daughters with her activities of daily living, and was restricted in overhead work and lifting while performing the transitional work provided by Defendant-Employer following her August 29, 2008 right shoulder injury.
19. Dr. Supple was of the opinion that, although Plaintiff had a combination of pre-existing conditions in her left shoulder that could have become symptomatic at any time, based on his experience as a shoulder specialist and based on Plaintiff's history, he believed that the surgery he performed on her left shoulder was necessitated by her compensable right shoulder injury. He further opined, and the Full Commission finds as fact, that Plaintiff's exclusive reliance on her left arm after the right shoulder injury caused her pre-existing left shoulder condition to become symptomatic and to subsequently require surgery.
20. Dr. Graves testified that he did not believe that the right shoulder surgery caused enough overuse of Plaintiff's left shoulder to cause a rotator cuff tear. He disagreed with Dr. Supple's opinion that the left shoulder surgery resulted from the compensable right shoulder injury. Dr. Graves testified that what made the most sense to him was that Plaintiff actually injured both shoulders at the time of the original August 29, 2008 injury.
21. The Full Commission finds as fact that after August 29, 2008, and particularly after Plaintiff's October 21, 2008 right shoulder surgery, Plaintiff relied on her left arm to do all of her tasks, both at work and outside of work. While Plaintiff was in physical therapy for her right shoulder during the fall of 2008 and the winter of 2008-2009, she used her left arm to assist *Page 9 
the right arm. She did, however, significantly restrict her normal activities by hiring someone to take care of her yard and clean her house, and her daughters helped her with routine activities like bathing, dressing, cleaning and laundry. Essentially, from August 29, 2008 through the time she began complaining to Dr. Supple of worsened left shoulder symptoms, Plaintiff had to do everything with her left arm only.
22. To the extent that Dr. Supple's and Dr. Graves' testimony is in conflict, the Full Commission accords more weight to the testimony of Dr. Supple, as the treating shoulder specialist who has seen Plaintiff many times over the course of many months, as opposed to Dr. Graves, who only saw Plaintiff once. The Full Commission finds that Dr. Supple's causation opinion is grounded in his extensive experience as well as Plaintiff's history and is not mere speculation or conjecture.
23. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to receive temporary total disability compensation at the rate of $786.00 per week.
24. Dr. Supple's treatment of Plaintiff's left shoulder condition has been reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to said condition. Further medical treatment is reasonably required for Plaintiff's left shoulder to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
25. Defendants appealed this matter to the Full Commission and by its decision herein the Full Commission is affirming the decision of the Deputy Commissioner and ordering Defendants to pay compensation to Plaintiff for medical expenses related to his left shoulder condition. Plaintiff is requesting attorney fees under N.C. Gen. Stat. § 97-88.
26. Plaintiff's counsel has requested that approval of an attorney's fee for representing Plaintiff at the hearing level be deferred until a later stage of this claim. *Page 10 
 *********** Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: CONCLUSIONS OF LAW
1. Plaintiff has proven by the greater weight of the evidence that her left shoulder condition was causally related to her right shoulder injury. Plaintiff's reliance on her left arm to do all of her tasks, both at work and outside of work and to assist her right arm after the August 29, 2008 injury to her right shoulder caused her pre-existing left shoulder condition to become symptomatic through overuse and caused the need for the left shoulder surgery that Dr. Supple performed. As such, Plaintiff has shown that her left shoulder condition and the left shoulder surgery were direct and natural consequences of her compensable right shoulder condition and are therefore compensable. "All natural consequences that result from a work-related injury are compensable under the Workers' Compensation Act." Cannon v. Goodyear Tire Rubber Co.,171 N.C. App. 254, 260, 614 S.E.2d 440, 444 (2005). "While there must be some causal connection between the employment and the injury, it is not necessary that the original injury be the sole cause of the second injury." Vandiford v. Stewart EquipmentCo., 98 N.C. App. 458, 462, 391 S.E.2d 193, 195 (1990). "Clearly, aggravation of a pre-existing condition which results in loss of wage earning capacity is compensable under the workers' compensation laws in our state." Smith v. Champion, Int'l,134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (2000).
2. Plaintiff is entitled to have Defendants pay for the medical treatment that she has heretofore received for her compensable left shoulder condition with and/or at the direction of Dr. Supple, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 11 
3. Plaintiff is also entitled to have Defendants authorize and pay for further medical treatment for her compensable left shoulder condition including, but not limited to, diagnostic testing and imaging, surgery, physical therapy, prescriptions, referrals and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff is entitled to attorney fees as a part of costs, in the discretion of the Full Commission, for Defendants pursuit of this appeal to the Full Commission. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay for the medical treatment that Plaintiff has heretofore received for her compensable left shoulder condition with and/or at the direction of Dr. Supple including, but not limited to, diagnostic testing and imaging, surgery, physical therapy, prescriptions and mileage according to Industrial Commission adopted procedures.
2. Dr. Supple is hereby designated as Plaintiff's treating physician for her compensable left shoulder condition and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the medical treatment that he recommends for said condition, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, referrals and mileage.
3. Defendants shall pay to Plaintiff, attorney fees as a part of costs pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit to the Full Commission an itemized *Page 12 
accounting of time spent defending this appeal along with an affidavit in support of his request for attorney fees.
4. Defendants shall pay the costs.
This the __ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1